In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-3034

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ISRAEL C. ISBELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 09-cr-10122 — **Michael M. Mihm**, *Judge.*

ARGUED MAY 28, 2025 — DECIDED AUGUST 6, 2025

Before RIPPLE, ST. EVE, and KOLAR, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Israel Isbell pleaded guilty to receipt of child pornography and served his prison sentence. Within approximately the next year and a half, however, he violated several conditions of his supervised release. The district court accordingly revoked Isbell's supervision and sentenced him to an additional term of imprisonment followed by supervised release.

Isbell now challenges three provisions of his release conditions that the court imposed in its most recent revocation sentencing. For the following reasons, we affirm.

## I. Background

In 2010, Isbell pleaded guilty to receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1). After remarking that the content Isbell received was "as bad as it gets," the district court sentenced Isbell to 180 months' imprisonment followed by a lifetime of supervised release. Isbell's release conditions required that he participate in sex-offender treatment, refrain from the unlawful use of controlled substances, and install filtering software on any computer he possessed or used to monitor his access to sexually oriented websites.

Isbell began testing the bounds of the restrictions related to his internet usage toward the end of his prison sentence. While serving the final months of his sentence on home detention at his brother's house, Isbell accessed the internet on a computer he purchased, his brother's laptop, gaming consoles, and a smart television. He used the smart television to access YouTube videos for sexual stimulation. Although Isbell knew he could not access internet-capable devices while on home confinement, he reasoned that the court could not punish him before his term of supervised release had begun.

Then, in anticipation of the start of his supervised release, Isbell requested permission to purchase a smart television. The probation officer declined Isbell's request because the office could not install monitoring software on it consistent with the terms of his release. A week into his supervision, another officer confiscated a smart Blu-ray player from Isbell and

reiterated that he could not possess devices capable of streaming content over the internet without monitoring software. Isbell disputed whether the condition applied to these devices but withdrew his motion. The court later modified the condition to impose an extendable six-month internet ban followed by continuing monitoring restrictions on internet-capable devices.

Five months after the modification, the probation office filed its first petition to revoke Isbell's supervised release based on his alleged marijuana use and unsuccessful discharge from a sex-offender treatment program. Isbell admitted to the allegations, but the parties agreed to a six-month continuance because he had completed a substance abuse treatment program and started working with a new sex-offender treatment provider. The district court admonished Isbell to "[c]omply with [his] conditions" or he would "end up back in here long before" the six months lapsed.

The admonition did not have its desired effect. The following month, probation filed two supplemental petitions. The first petition concerned Isbell's use of a smart television, while the second focused on his unsuccessful discharge from his new sex-offender program. Isbell's new treatment provider explained that Isbell was more concerned with fighting his supervised release conditions than receiving proper treatment.

After a hearing, the court found that Isbell violated his release conditions. The court then sentenced him to an additional term of imprisonment and imposed a new term of supervised release, which Isbell appealed. We vacated the supervised release revocation judgment and remanded for resentencing based on an issue unrelated to the present appeal.

*See United States v. Isbell*, No. 24-1837, 2024 WL 4129523, at *1 (7th Cir. Sept. 5, 2024).

On remand, the district court resentenced Isbell to 16 months' imprisonment followed by 8 years of supervised release. Pertinent here, Isbell objected to three provisions of his proposed release conditions.

First, Isbell argued that a condition requiring his "participat[ion] with the U.S. Probation Office's Computer and Internet Monitoring Program" was unconstitutionally vague and overbroad. The condition specifies that Isbell "shall install filtering software on any computer you possess or use which will monitor access to websites that depict sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B) …."

Second, Isbell argued that a condition concerning medical marijuana improperly delegated judicial authority to a treatment provider. The relevant part of the condition provides: "[i]f prescribed by a physician, the use of medical marijuana is permitted, except when you are engaged in a treatment program which prohibits the use of substances that impair physical or mental functioning."

The district court rejected these challenges and imposed the two release provisions as proposed.

Third, Isbell argued that the court should not require him to undergo substance abuse treatment because he recently completed treatment and had no subsequent positive marijuana tests. He also explained that his prior convictions for methamphetamine possession and delivery of cocaine occurred over a decade ago, rendering further treatment unnecessary.

The court responded:

> It's a long time ago, but I think it's enough to say that he'll engage in drug treatment -- I assume you're not going to order him to engage in drug treatment if it's not needed, correct?

The probation officer agreed, and the judge continued:

> I'm going to leave it in, but if [probation] order[s] it and [Isbell] doesn't think it's called for … [he] can bring the case to me. That's how I'm going to leave it.

The written judgment employed the same language as the proposed condition, providing that Isbell "shall participate in a program for substance abuse treatment as approved by the U.S. Probation Office …."

Isbell now appeals.

## II. Discussion

Isbell reasserts his vagueness and overbreadth challenge to the computer monitoring condition and his delegation challenge to the medical marijuana provision. He also argues that the written judgment mandating substance abuse treatment is inconsistent with his sentence as orally pronounced. We review each challenge de novo. *See United States v. Schrode*, 839 F.3d 545, 554 (7th Cir. 2016) (preserved constitutional challenges to release conditions); *United States v. Robinson*, --- F.4th ----, 2025 WL 1892809, at *6 (7th Cir. July 9, 2025) (proffered inconsistencies).

## A. Computer and Internet Monitoring

A release condition is unconstitutionally vague "if it would not provide a person of reasonable intelligence with sufficient notice" of what it requires. *United States v. Shannon*, 851 F.3d 740, 744 (7th Cir. 2017). Our "principal concern"

underlying this doctrine is that a defendant might "unknowingly run[] afoul of a legal requirement." *Id.* In a similar vein, a condition is overbroad when it deters a defendant from engaging in lawful conduct due to uncertainty about the condition's scope. *See United States v. Thompson*, 777 F.3d 368, 380 (7th Cir. 2015).

Isbell argues that the condition requiring him to "install filtering software on any computer" he possesses or uses suffers from both defects because he does not know what "any computer" covers. He asks, for example, whether the condition prohibits him from using devices ranging from mechanical cash registers and calculators to those that connect to the internet like gas pumps, vending machines, and smart refrigerators.

The language and purpose of the condition easily answer his hypotheticals. *See Shannon*, 851 F.3d at 744 (explaining that a condition's "limiting language" can "provide[] adequate notice of [its] requirements"); *United States v. Bickart*, 825 F.3d 832, 840 (7th Cir. 2016) (considering what the "condition is meant to ensure" in response to a vagueness challenge). The condition concerns the "Computer and Internet Monitoring Program" that seeks to "monitor [Isbell's] access to websites that depict sexually explicit conduct." So, the condition does not cover devices such as mechanical cash registers that do not access the internet. A person of reasonable intelligence would likewise understand that the condition does not apply to gas pumps, vending machines, and refrigerators. Although these devices may connect to the internet, none allows Isbell to search for content, leaving nothing for the software to monitor.

Still, Isbell presses on. What about smart televisions, gaming consoles, and smart Blu-ray players that enable Isbell to search applications like YouTube but do not come with pre-installed internet-browsers? Isbell contends that perceived inconsistencies in how probation previously enforced his monitoring condition make its application to these devices particularly confusing. He questions, for example, why probation permitted him to possess a "Gabb phone" that could stream music but not a smart television to stream movies and why he can possess physical DVDs but not stream the same.

This argument does not persuade us. The broad purpose of monitoring Isbell's internet usage and the content he accesses applies to smart televisions, gaming consoles, and smart Blu-ray players too. Neither streaming music on an internet-restricted phone designed for minors nor possessing DVDs implicates the core concern of Isbell accessing "depict[ions]" of sexually explicit content over the internet—the medium used for his crime of conviction.

What is more, the district court already answered this question. In response to Isbell's vagueness objection, the court explained that it was not "improper to prevent [him] from using a smart TV that does not contain a factory-installed internet browser." The court's clarification not only puts Isbell on notice that the condition applies to smart televisions and like devices but also ameliorates concerns that Isbell's probation officer can interpret the condition with unlimited discretion. *See United States v. Miller*, 829 F.3d 519, 529 (7th Cir. 2016) (explaining that the district court "gave sufficient instructions for the probation officer to exercise his discretion" by providing examples of places "frequented or attended by minors"); *United States v. Bloch*, 825 F.3d 862, 875 (7th Cir. 2016)

(rejecting the defendant's objection to the phrase "or else-where" because the court "provided further clarification for what it meant"). The condition does not need to name these devices, particularly when the court found—and told Isbell—that it encompassed them.

To be sure, Isbell may encounter devices in the future that raise questions about the condition's application. But "close questions" do not render a condition vague. *See United States v. Edwards*, 944 F.3d 631, 638 (7th Cir. 2019); *see also United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008) ("[C]onditions of supervised release need not … describe every possible permutation ….") (citation modified)); *United States v. Van Donk*, 961 F.3d 314, 325 (4th Cir. 2020) (affirming a condition even though "some gray areas" exist). The language and purpose of the condition, along with the district court's instruction, provide Isbell with notice of what is forbidden and equip probation with guidance on how to apply it. From there, we expect Isbell will run issues by probation in advance and that probation will apply the condition in a reasonable manner. *See Edwards*, 944 F.3d at 638.

## B. Medical Marijuana Usage

Isbell next takes issue with the release condition concerning medical marijuana. Under the relevant provision, Isbell may use medical marijuana prescribed by a physician "except when [he is] engaged in a treatment program which prohibits the use of substances that impair physical or mental functioning." Isbell argues that the quoted clause improperly delegates Article III power to treatment providers.

District court judges "lack constitutional authority to delegate the duty of imposing a defendant's punishment to a

non-Article III judge." *United States v. Wagner*, 872 F.3d 535, 543 (7th Cir. 2017). This means that treatment providers or probation officers cannot "decide the nature or extent of the defendant's punishment." *Id.* (quoting *Schrode*, 839 F.3d at 555). So, a provision that imposes treatment "as deemed necessary by probation" violates the non-delegation rule because it lets probation decide "*whether* the condition will be imposed at all." *Id.* For this same reason, we struck a condition in *Wagner* that allowed a defendant to watch adult pornography "unless the sex offender treatment provider determines [it] should also be restricted or denied." *Id*.

By contrast, treatment providers and probation officers may perform "ministerial acts or support services related to the punishment imposed." *Id.* (quoting *Schrode*, 839 F.3d at 555). A court, for example, can provide that a defendant will attend treatment "as approved" by probation because this simply allows probation to manage and supervise court-ordered treatment. *Id.* Similarly, treatment providers may set and apply their own treatment rules—a support service well within their purview. *Cf. United States v. Armour*, 804 F.3d 859, 871 (7th Cir. 2015) (clarifying that the district court does not need to provide a defendant with treatment rules at sentencing); *see also Van Donk*, 961 F.3d at 327 (holding "that it's proper for a court to order a probationer to follow treatment-program rules" and collecting cases).

In this case, the court made the necessary decisions about the nature and extent of Isbell's punishment. First, the court granted Isbell an exception to the prohibition against controlled substances by allowing him to use medical marijuana prescribed by a physician. Consistent with delegation principles, it then decided that Isbell should attend treatment and

"shall abide by the rules of [his] treatment provider[s]." But the court did not stop there. Perceiving a potential conflict between its prior two pronouncements, it determined that the program rules of Isbell's treatment provider would prevail over his allowance to use medical marijuana. By setting up this framework, the district court sufficiently outlined Isbell's punishment.

Isbell protests this conclusion, contending that the condition at issue here is indistinguishable from the one we struck in *Wagner*. We disagree. Not only did the provision in *Wagner* allow a treatment provider to decide whether a prohibition should apply to a particular defendant, it did so without limiting the provider's discretion. Delegation concerns dissipate where, as here, the court instructed Isbell to follow a provider's generally applicable program rules tethered to the goal of treatment. *See Armour*, 804 F.3d at 871 (differentiating between provisions that provide "no guidance whatsoever" for the exercise of discretion and those that do); *see also Van Donk*, 961 F.3d at 328 (differentiating between a treatment provider "deciding only the means of court-ordered therapy" and imposing restrictions unrelated to therapy).

A separate aspect of the medical marijuana provision, however, gives us pause. The mandatory conditions of supervised release imposed on all applicable defendants prohibit Isbell from committing federal crimes and unlawfully possessing or using controlled substances. 18 U.S.C. § 3583(d). By allowing Isbell to use medical marijuana, which federal law prohibits, the court attempted to override these mandates. We question its authority to do so. *See United States v. Schostag*, 895 F.3d 1025, 1028 (8th Cir. 2018) ("the district court had no discretion to allow [the defendant] to use medical marijuana

while on supervised release"); *United States v. Cannon*, 36
F.4th 496, 501 (3d Cir. 2022) (per curiam) (suggesting the same
for bond release conditions).

But neither Isbell nor the government has asked us to
strike this aspect of the condition. Instead, the government
has requested that we affirm the condition as written. We do
so here, finding no violation of the non-delegation rule.

### C. Substance Abuse Treatment

Finally, Isbell asks us to vacate the provision stating that
he "shall participate in a program for substance abuse treat-
ment as approved by" probation. He primarily argues that
this written provision mandating treatment conflicts with his
account of the court's oral pronouncement allowing proba-
tion to decide whether treatment is necessary. And the oral
pronouncement, he continues, violates the non-delegation
rule.

An unambiguous oral pronouncement controls when it
conflicts with the written judgment. *Robinson*, 2025 WL
1892809, at *6. But "there is no need for us to upset the district
court's sentence" when "no inconsistency" or conflict exists.
*United States v. Strobel*, 987 F.3d 743, 747 (7th Cir. 2021); *United
States v. Harris*, 51 F.4th 705, 722 (7th Cir. 2022).

Isbell's challenge fails because the court's oral pronounce-
ment does not conflict with its written judgment. During his
sentencing hearing, Isbell objected to the proposed condition
imposing substance abuse treatment because he believed he
no longer needed it. The court disagreed with Isbell's assess-
ment, noting that his history with marijuana, methampheta-
mine, and cocaine is "enough to say that he'll engage in drug
treatment." The court thus decided to "leave [the condition]

in, but if [probation] order[s] [treatment] and he doesn't think it's called for, … [Isbell] can bring the case to me." In line with this oral pronouncement, the court's written judgment left the proposed condition untouched.

Isbell interprets other parts of the colloquy as evidence that the district court intended to modify the provision. The court, for example, stated that Isbell can return "if" the probation office orders uncalled-for treatment and confirmed with the office that it would not "order [Isbell] to engage in drug treatment if it's not needed." To Isbell, this suggests that the sentence as orally pronounced would allow probation to decide whether Isbell needed treatment. Read in the broader context of the district court's decision to retain the proposed condition, however, these statements reflect probation's ability to "approve" of an appropriate program for Isbell. Indeed, when the court modified other conditions it spoke with greater precision, telling the parties "let's go with" new language and asking probation to "add that in there somehow."

Isbell takes one last swing at the provision—this time challenging it as written. In his reply brief, he argues that the written condition suffers from a tailoring problem because the court should not have ordered treatment when it was uncertain Isbell would need it. Putting the issue of waiver aside, the court's statement that "he'll engage in drug treatment" is far from the equivocal stance upon which Isbell's tailoring argument relies. We accordingly affirm the substance abuse treatment provision.

*     *     *

The judgment of the district court is

AFFIRMED.